8285

NEAL v. SOUTHERN RY.

1. CARRIER — PASSENGER — CONTRIBUTORY NEGLIGENCE —WIANTONNESS — ISSUES.—In this case under evidence tending to show a passenger lay over at a station for some hours for another train of the carrier, and while in the station she was invited out by the station agent, who then had the station scoured, into the colored waiting room, where she declined to go, and was made ill by going out in the weather, the issues of negligence, contributory negligence and wantonness were properly sent to the jury.

2. IBID.—IBID.—IBID.—A passenger is not guilty of contributory negligence in taking a train that would require her to lay over for several hours in her journey rather than one requiring a shorter lay over, and while waiting at the station she is entitled to that degree of care the law requires for the safety, comfort and convenience of passengers.

3. CHARGE—PUNITIVE DAMAGES.—The charge here complained of as instructing the jury to give punitive damages for mere negligence when construed as a whole, held not to be subject to that criticism.

4. IBID.—IBID.—WAITING ROOM.—The thirty minutes provided by statute and the rule of the railroad commission for opening waiting rooms before arrival of trains is only the minimum time, and whether a waiting room is kept open a reasonable time under all the circumstances is for the jury.

5. CHARGE—PREPONDERANCE OF EVIDENCE.—Saying to the jury the preponderance of evidence means the weight which the jury give the evidence and this the jury arrives at by the appearance of the witnesses, and the reasonableness of their statements, is not a charge on the facts, but stating merely some of the ways by which jurors judge of a witness' veracity.

6. PASSENGER—CARRIER—CONTRIBUTORY NEGLIGENCE.—THE ISSUE of contributory negligence alleged on the part of the passenger in not going into the colored waiting room, in not going into a near-by hotel and in not taking reasonable measures to prevent injury from exposure, was properly submitted to the jury.

Before WILSON, J., Union.    Affirmed.

Action by Ellen Neal against Southern Railway Co. Defendant appeals.

*Messrs. Sanders & DePass,* for appellant, cite: *The act of plaintiff is the proximate cause of her injury:* 75 S. C. 355; 51 S. C. 484; 53 S. C. 412. *Defendant not guilty of negligence:* 44 Am. St. R. 476; 35 S. C. 484; 69 S. C. 444. *Instruction as to witnesses' appearance and statements is charge on facts:* 56 S. C. 531; 63 Ala. 166; 87 S. C. 193.

*Messrs. Wallace & Barron,* contra, cite: *When more than one inference may be drawn from the evidence the issue should go to the jury:* 83 S. C. 447; 66 S. C. 6. *Contributory negligence is for the jury:* 88 S. C. 449. *Scouring the waiting room while passenger was waiting was wantonness:* 88 S. C. 449. *What was a reasonable time to keep the waiting room open is for the jury:* 66 S. C. 9; 88 S. C. 449.

August 7, 1912.    The opinion of the Court was delivered by

MR. JUSTICE HYDRICK.    The plaintiff recovered judgment against defendant for $500 damages for sickness and

suffering caused by the negligent and wanton conduct of defendant's agent at Blacksburg in having the waiting room for white people scoured, while she was waiting there as a passenger over defendant's road for a train for Yorkville, thereby driving her out into the open on a cold, bleak and rainy day, from which exposure she incurred a serious illness.

On January 13, 1910, plaintiff became a passenger on defendant's road from Union to Yorkville. It was necessary for her to change cars at Spartanburg and Blacksburg. She left Union on the morning train, which arrived at Spartanburg about 10:30 o'clock. There were two local trains going north on defendant's main line, passing Blacksburg. One left shortly after the arrival of the train on which plaintiff came from Union; the other, about 3 o'clock p. m. On other occasions, when plaintiff had made the same trip, she had taken the 3 o'clock train; but on this occasion she took the morning train, preferring to wait at Blacksburg, because, she said, it was quieter than at Spartanburg. She arrived at Blacksburg about midday. Her train did not leave for Yorkville until about 7:40 that evening. About 1 o'clock the station agent came to the waiting room, and asked plaintiff, who was accompanied by her little son, and another woman, who had two children with her, what train they were waiting for, and, on being told, he asked them to go into the waiting room for colored people, stating that he was going to have the white waiting room scoured. At that time, there were some colored boys or men in the other waiting room, laughing and talking and having fun. Plaintiff said, in the presence of the agent, that she would not go into the other waiting room where the negroes were. Asked by the other woman what they should do, plaintiff said she did not know, unless they should go out and sit on some benches on the south side of the station, where they would be protected from the damp and chilly wind which was blowing from the north. The agent

allowed them to do this, without offering to make any other provision for their comfort, and proceeded, notwithstanding their objection to going into the waiting room for colored people, to scour out the waiting room for white people by flooding the floor with water by means of a hose. It was two hours or more before the room was dry enough for plaintiff to return to it. When she did, she was suffering with a severe headache, and when she reached her home that night, she was seized with a chill, and was sick a week or more with pleurisy. Plaintiff said the reason she did not seek some other place of shelter was because she knew no one in Blacksburg upon whom she felt she could intrude, and had no money to go to a hotel. There was a hotel conveniently near where she could have waited without charge, though it does not appear that she knew it.

The defendant's station agent testified that the room was scoured at the particular time mentioned, because there was no train from that time, 1 o'clock p. m., until 4 o'clock p. m., and that was the longest time during the day between trains. He denied telling plaintiff to go into the colored waiting room, and said that, in fact, he did not remember seeing her at all, and that, when he went to scour the waiting room, there was no one at all in it, and he had no knowledge of there being any passengers there waiting for a train; but he said he saw some ladies, accompanied by children, walking about outside, and near the station; that it was a nice warm day—too warm to have fire in the waiting room. As to the weather, he was corroborated by several other witnesses.

In view of the above statement of the testimony, and the recent decision of this Court in *Brackett* v. *Ry.,* 88 S. C. 447, 70 S. E. 1026, no extended discussion is necessary to show that there was no error in submitting to the jury the issue of negligence and contributory negligence, and, also, that of wantonness.

We fail to see any force in the point made by appellant that plaintiff was guilty of contributory negligence in taking the morning train from Spartanburg to Blacksburg, instead of the afternoon train, which she had taken on former occasions. It does not appear that her ticket was limited to use on the latter train. She had the right to take any train on defendant's road on which it was good, and defendant was bound to exercise toward her that degree of care which the law requires of carriers for the safety, comfort and convenience of passengers from the time she became a passenger at Union until she ceased to be a passenger. The defendant knew that she would have to lie over either at Spartanburg or at Blacksburg, and for some time, more or less, at both places, and it was its duty, therefore, to provide for her safety, comfort and convenience as a passenger. We do not see how the plaintiff can be said to have been negligent in taking the morning train from Spartanburg to Blacksburg any more than she could be charged with negligence in not waiting until the next day to make her journey. If defendant had run half a dozen trains a day, and she had taken one of them, which was wrecked by the negligence of defendant, and she had been injured, could defendant contend that she was guilty of contributory negligence because she did not take one of the others? The fallacy of such an argument is apparent.

On the subject of damages, the Court charged as follows: "Now, damages are divided into two general heads, actual or compensatory, which means the same thing, and vindictive or punitive or exemplary, which means the same thing. What are actual damages? Actual damages is that amount assessed by a jury which gives or compensates a person for an actual injury, a real injury that he or she has suffered. That is the rule now as to actual or compensatory damages. The other damages are something more. They are an amount given by way of punishment, not only giving the party the amount of actual dam-

ages sustained, but giving something more for the wrong
done by the other party, for the injury done, as a way of
punishment. These kind of damages are called punitive,
exemplary or vindictive damages. Now, in this case, the
plaintiff sues for both actual and exemplary, punitive or
vindictive *all meaning the same thing.* Now, then, in any
case, if the party should suffer actual damages, he or she
ought not to receive punitive, vindictive or exemplary dam-
ages, unless it is shown that the other side has conscien-
tiously been guilty of some wrong, or acted in such a negli-
gent and careless way, when the law says that, under the
circumstances, they ought to have known to have done
better. You see, vindictive or exemplary or punitive dam-
ages, all the same thing, meaning the same thing, are given
by way of punishment, to punish the other side for a wrong,.
and the law says that ought not to be done, unless the party
acted in such a reckless *and careless* way, that under the cir-
cumstances, he ought to be punished for his recklessness
*and carelessness.* If the party is just simply negligent, just
ordinary damages should be allowed."

The defendant complains that, under this charge, the jury
were allowed to award punitive damages for mere negli-
gence. While it does appear from the words italicized that
there was some confusion in the expressions of the Court,
still when the whole charge upon the subject is considered,
we do not think the jury were misled. The last word on
the subject was, "if the party is just simply negligent, just
ordinary damages should be allowed."

The rule of the railroad commission, that the waiting
rooms at stations where tickets are sold must be opened at
least thirty minutes before the schedule time for the arrival
of passenger trains and kept open until such trains
4    arrive, does not fix *all* the duty of railroad companies
with respect to keeping their waiting rooms open.
The commission only fixed the minimum time at all stations
where tickets are sold. The statute (sec. 2148, vol. I, Code

1902) requires that the waiting rooms at such stations shall be "kept open at such hours as to accommodate passengers traveling over such road on any of its passenger trains." Under this statute, such stations must be kept open long enough before the arrival and departure of trains—not less than thirty minutes—to meet the reasonable requirements of the traveling public. It establishes the rule of a reasonable time. There was, therefore, no error in modifying defendant's request to the effect that compliance with the rule of the commission satisfied the law, by saying that the circumstances might require enlargement of the time prescribed by the rule, and that the jury were the judges of what was a reasonable time, according to the circumstances of each case. Nor was there error in modifying the request that defendant had the right to close its waiting room for a necessary purpose, to wit: to cleanse it, provided it opened it thirty minutes before the arrival or departure of any train, by adding that provided thirty minutes was a reasonable time, under all the circumstances.

The Court charged that the plaintiff must prove her case by the preponderance of the evidence, and, in explaining what was meant by the preponderance of the evidence, he said it does not necessarily mean the greater number of witnesses, but the weight which the jury give to the evidence, and added: "You go by the witnesses' appearance and the reasonableness of their statements, look into their faces and try to judge them." The defendant complains of this as a charge upon the facts. We fail to perceive the force of the objection. No intimation can be gathered from the remark as to what the Judge thought was the truth with respect to any fact in issue, and, therefore, the language is not obnoxious to the objection urged. The Judge mentioned only a few of the many well recognized rules for determining the truth of human testimony. He did not say that by those mentioned alone should the evidence of the witnesses be weighed.

The issue of plaintiff's alleged contributory negligence in refusing to go into the colored waiting room, in remaining out in the cold, when she could have found free shelter at a near-by hotel, or other place, and generally in failing to take reasonable measures to prevent injury to herself from the exposure, was fairly submitted to the jury, and we do not see that their verdict is contrary to any instruction given by the Court.

Judgment affirmed.

MR. JUSTICE WATTS *did not sit in this case.*